**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Criminal Action No. 12-298 (ES) |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| FARAD ROLAND, | : | |
| | : | |
| Defendant. | : | |
| | : | |

SALAS, DISTRICT JUDGE

### I.    Introduction

Defendant Farad Roland ("Defendant" or "Roland") moves for an order prohibiting the Government from subjecting him to testing by its experts—which the Government seeks to administer in view of Roland's notice of an intellectual-disability claim.  (*See* D.E. Nos. 274, 278 & 280).  The Government opposes the motion.  (*See* D.E. No. 289).  The Court decides this matter without oral argument given the parties' representations that oral argument is unnecessary and that the Court may rely on the parties' respective briefing and declarations to resolve the parties' dispute.  (*See* D.E. No. 288).

For the reasons set forth below, the Court OVERRULES-in-part Roland's objections to the proposed testing and will permit the Government to proceed with testing as discussed below.

### II.    Background[1]

This is a death penalty case.  On December 5, 2016, Roland filed a notice advising the Court and the Government that he intends to raise an intellectual-disability claim pursuant to

---

[1]    Additional facts are provided where relevant in this Court's discussion, *infra*.

*Atkins v. Virginia*, 536 U.S. 304 (2002) and *Hall v. Florida*, 134 S. Ct. 1986 (2014), and is therefore ineligible for the death penalty.  (D.E. No. 274).  In that notice, Roland stated that intellectual and neuropsychological testing was conducted on November 11 and 12, 2016, revealing that he has an IQ of 71 and neuropsychological deficits.  (*Id.*).

In total, the following tests were administered to Roland by his experts:

1. Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV")
2. Wide Range Achievement Test, Fourth Edition ("WRAT-IV")
3. California Verbal Learning Test ("CVLT") II
4. Grooved Pegboard
5. Wechsler Memory Scale IV-Full
6. Repeatable Battery for the Assessment of Neuropsychological Status—Update ("RBANS")
7. Boston Naming Test
8. Test of Memory Malingering
9. Delis-Kaplan Executive Functioning System
10. Common Sense Questionnaire
11. Texas Functional Living Scale

(D.E. No. 278 ("Def. First Obj.") at 2-3).[2]

On January 6, 2017, the Government provided notice of its intent to have its own experts administer the following tests to Roland:

1. Medical Symptom Validity Test ("MSVT")
2. Rey Complex Figure Test & Memory Trials
3. Grooved Pegboard
4. California Verbal Learning Test II ("CVLT-II")
5. Stroop Color & Word Test
6. Trail Making Parts A and B
7. Auditory Consonant Trigrams ("ACT")
8. Benton Judgment of Line Orientation ("JOLO")
9. Wechsler Adult Intelligence Scale IV ("WAIS-IV")
10. Wechsler Memory Scale IV ("WMS-IV")
11. Repeatable Battery for the Assessment of Neuropsychological Status Update ("RBANS")
12. Delis-Kaplan Executive Function System ("D-KEFS")
13. Boston Naming Test ("BNT")
14. Verbal Fluency Tests ("FAS, Animals")

---

[2]     Roland will also be administered a test called "MOCA" at a later date, which is yet to be determined.  (*See* Def. First Obj. at 3).

     15. Kaufman Brief Intelligence Test-Second Edition ("KBIT-2")
     16. Victoria Symptom Validity Test ("VSVT")
     17. Wide Range Achievement Test-Fourth Edition ("WRAT-4")
     18. Structured Inventory of Malingered Symptomatology ("SIMS")
     19. Test of Memory Malingering ("TOMM")
     20. Minnesota Multiphasic Personality Inventory-2-Restructured Form ("MMPI-2-RF")

(*Id.* at 3).

On January 30, 2017, Roland moved for an order prohibiting the Government's experts from subjecting him to this testing. (*See generally id.*).

On February 1, 2017, the Government filed a second notice advising Roland of an additional test their experts intended to administer to him: the Vineland Adaptive Behavior Scale, 3rd Edition ("Vineland-3"). (*See* D.E. No. 280 ("Def. Sec. Obj.") at 1). On February 7, 2017, Roland moved for an order prohibiting the Government's experts from subjecting him to this additional testing. (*See generally id.*). On February 10, 2017, the Government filed an opposition to Roland's motions. (D.E. No. 282).[3]

Given the duration of this action, as well as the operative scheduling order, the Court writes primarily for the parties and declines to recount the parties' arguments in detail. Rather,

---

[3]    Notably, in its February 10 opposition, the Government indicated that it was prepared to call one of its experts to testify at a previously-scheduled February 17, 2017 hearing relating to Roland's objections and the Government's responses thereto. (*See* D.E. No. 279 at 1; D.E. No. 282 at 14, 17, 19 & 20). Inexplicably, the Government had not submitted any expert declarations with its February 10 opposition. Therefore, the Court issued a Text Order on February 14, 2017 encouraging both sides to submit expert declarations in advance of the February 17 hearing. (D.E. No. 283). The parties then provided various submissions opposing or defending the propriety and/or feasibility of expert testimony at the hearing and providing declarations pursuant to the Court's February 14 Text Order. (*See* D.E. Nos. 284-286). The Court conducted a status conference on February 16, 2017, pursuant to which the Court provided the Government an opportunity to re-file its brief with citations to any expert declarations and provided Roland an opportunity to submit responsive expert declarations—but the Court declined to accept new legal argument from either side. (*See* D.E. No. 288). Also, during the February 16 conference, both sides agreed that a hearing was unnecessary. On February 17, 2017, the Government re-filed its brief with an expert declaration. (D.E. No. 289 ("Gov't Resp. Br.") at 1; D.E. No. 289-1 ("Morgan Decl.")). On February 22, 2017, Roland provided two responsive expert declarations. (D.E. No. 290 ("Hunter Decl."); D.E. No. 291 ("Greenspan Decl.")).

the Court assumes the parties are familiar with the relevant issues raised by their respective submissions and will address each issue in turn.[4]

## III.   Discussion

### A.  Parallel Testing

Roland argues that rebuttal examination must be "limited to the tests conducted by defense experts." (Def. Sec. Obj. at 9). According to Roland, "this is a requirement under [Federal Rule of Criminal Procedure] 12.2, and the Fifth Amendment." (*Id.* at 9). The Government responds that "examinations as to the Defendant's mental health—even examinations that go beyond the specific tests conducted in the defense examinations—are permissible for rebuttal." (Gov't Resp. Br. at 4 n.1)

In *Buchanan v. Kentucky*, 483 U.S. 402 (1987), the Supreme Court "addressed the admissibility of evidence from a court-ordered evaluation where . . . a defendant had introduced psychiatric evidence related to his mental-status defense" and "held that the Fifth Amendment allowed the prosecution to present evidence from the evaluation to rebut the defendant's affirmative defense of extreme emotional disturbance." *Kansas v. Cheever*, 134 S. Ct. 596, 601 (2013). "The rule of *Buchanan*, which [the Supreme Court reaffirmed in *Cheever*], is that where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution may present psychiatric evidence in rebuttal." *Id.*

Roland provides no authority—nor is the Court aware of any—that limits the Government to conducting the same types of tests conducted by the Roland's experts. This

---

[4]     The Court has carefully reviewed the backgrounds of the Government's expert and Roland's experts. (*See* Morgan Decl. ¶ 1 & Exh. 1 thereto; Hunter Decl. ¶¶ 1-4 & Exh. 1 thereto; Greenspan Decl. at 2-3 & App'x A thereto). Both parties' experts have impressive credentials and experience—and, for purposes of resolving Roland's objections to the Government's testing, the Court does not lend more weight to one expert or another based on their education, training or experience.

Court finds that the Government's scope of rebuttal in this case is *not* limited to administering the same tests and asking the same questions that Roland's experts have already conducted and asked.  Rather, the Court permits the Government to conduct appropriate testing if supported by a sufficient basis for finding that such testing is relevant to the issue of Roland's intellectual-disability claim.[5]

### B.  The MMPI-2-RF Test

The parties hotly contest administration of the MMPI-2-RF test.  Roland argues that the Government expert should be prohibited from administering the MMPI-2-RF test because this test: (i) goes well beyond the Government's right of rebuttal; (ii) implicates Roland's Fifth and Sixth Amendment rights; (iii) is an unreliable testing instrument in this setting; and (iv) does not adhere to clinical standards.  (*See* Def. First Obj. at 8, 13, 14, 19).  The Government responds that the MMPI-2-RF test is an essential diagnostic tool for impartially determining whether Roland meets the definition of intellectual disability.  (Gov't Resp. Br. at 11 (citing Morgan Decl.)).

The Court has already articulated the relevant standard concerning the Fifth Amendment, *supra*.  Regarding the Sixth Amendment, the "proper concern of this Amendment" is "the consultation with counsel"—and, "[s]uch consultation, to be effective, must be based on counsel's being informed about the scope and nature of the proceeding."  *Buchanan*, 483 U.S. at 424.

The Court overrules Roland's objection to administration of this test.  As to Roland's Fifth Amendment argument, Court again permits the Government to administer the MMPI-2-RF test because its relevance to the issue of Roland's intellectual-disability claim is supported by a

---

[5]     To be sure, the admissibility and weight to be given to the results of such testing, or any derivative conclusions drawn therefrom, can be argued at the *Atkins* hearing.  And the Court is confident that Roland's counsel will diligently watch for and raise any improper use of testing results.

sufficient evidentiary basis.  (*See* Morgan Decl. ¶¶ 3-13).  And the Government's response and its accompanying expert declaration provide Roland with adequate notice about the scope, nature, and purpose of the MMPI-2-RF test.

Moreover, the Court is disinclined to second guess the Government expert who provided a declaration justifying the *administration* of the MMPI-2-RF test.  (*See* Morgan Decl. ¶¶ 3-13). Indeed, Roland's own cited case law—among other persuasive authority—supports administering this test in a death-penalty case.  (*See* Def. First Obj. at 4 (citing *United States v. Taylor*, 320 F. Supp. 2d 790, 794 (N.D. Ind. 2004)).  The Court has no doubt that the admissibility and weight of any results gleaned from administering the MMPI-2-RF test can— and will—be argued at the *Atkins* hearing.  (*See, e.g.*, Hunter Decl. ¶¶ 9-13; Greenspan Decl. at 3-5).

### C.  Effort Testing

Roland argues that the Government's proposed use of "Effort Tests" are unreliable and should not be permitted.  (Def. First Obj. at 24).  In particular, Roland objects to the following tests: the MSVT; the VSVT; the SIMS test; and the Rey Complex Figure Test and Memory Trials.  (*See id.* at 24-26).  The Government responds that effort tests are universally accepted in the field as part of a psychological examination.  (*See* Gov't Resp. Br. at 19-20).

The Court overrules Roland's objection.  The Government's expert has provided a declaration stating the following:

> The standard practice when conducting an examination to determine intellectual disability is to conduct "effort tests"—tests to see if the subject is malingering—throughout the examination. Employing multiple effort tests throughout the examination is the best way to test for the feigning of selective deficits—i.e. to determine of the subject is "faking it."

(Morgan Decl. ¶ 20).  The Court is not convinced that Roland's expert declaration concerning effort tests should bar *administration* of such testing (*see* Greenspan Decl. at 6-7), and there is no apparent reason why the admissibility or weight of effort testing cannot be argued at a later time.

### D.  Practice Effect

Roland argues that clinical practice is to avoid administering the same intelligence test within the same year to the same individual because it will overestimate intelligence.  (*See* Def. First Obj. at 26-27).  He asserts that the most unreliable option is Government's intended course: administer the exact same testing within the same year.  (*See id.* at 27-28).  Roland highlights that certain proposed tests are particularly subject to practice-effect, namely the Wechsler Adult Intelligence Scale and the Wechsler Memory Scale.  (*See id.* at 28).  The Government responds that its experts' proposed examination will avoid practice effect.  (Gov't Resp. Br. at 20-21).

The Court overrules Roland's objection.  The Government's expert proposes a course to account for and "rule out" practice-effect issues.  (Morgan Decl. ¶ 21).  Roland's experts' statements attempting to bar certain testing out of concerns for practice effect are best suited for weight or admissibility objections to be made at a later time.  (*See, e.g.*, Greenspan Decl. at 8 ("Administering the WAIS-IV a second time inside of one year will produce a practice effect and an *unreliable* test result" (emphasis added); *id.* ("[T]here is absolutely no reason for the government to administer the KBIT-2, as it is a *less* comprehensive measure and its score does not provide any additional information that is not *more validly* obtained by the WAIS-IV." (emphases added)).

### E.  Multiple & Duplicative Testing

Roland objects to the administration of multiple and duplicative testing proposed by the Government's experts.  (Def. First Obj. at 28-29).  In particular, Roland objects to administration

of the following: the KBIT-2; the Trail Making Test B; the Verbal Fluency Test; and the Stroop Color & Word Test. (*Id.*). Further, Roland argues that an alternate form of RBANS should be used. (*Id.* at 29. n.10). Except for the KBIT-2 (*see* Morgan Decl. ¶ 21), nowhere in the Government's brief or in its expert declaration is there a response to Roland's objections. Indeed, the Government and its expert fail to justify the use of the aforementioned tests.

Accordingly, the Court bars the Government from conducting the Trail Making Test B, the Verbal Fluency Test, and the Stroop Color & Word Test. Further, the Court orders that an alternate form of RBANS testing should be used. The Government may administer the KBIT-2.

### F. The Vineland Test

Roland argues that there is no clinical basis for administering Vineland-3. (Def. Sec. Obj. at 2). He contends that Vineland-3 is designed to be given to parents, caregivers or teachers. (*Id.* at 4). And Roland objects to the Government administering this test on him for several reasons. (*See id.* at 4-9). The Government responds that Vineland-3 is designed to test adaptive functioning—which must be considered under the Supreme Court's *Hall* decision, as well as relevant clinical guidelines. (*See* Gov't Resp. Br. at 14-15).

The Court will sustain Roland's objection in part. Although the Government's expert declaration purports to justify the use of Vineland-3 generally (*see* Morgan Decl. ¶¶ 15-19), it is tellingly silent on Roland's point that Vineland-3 is designed to be given to parents, caregivers or teachers.[6] In other words, the Government has failed to offer any expert support that Vineland-3 can be administered to Roland *himself*—even though Roland had noticed the Court and the Government that "Vineland-3 is an instrument designed to be given to parents, caregivers or teachers" and, because it is "designed as a test to be given to third-party respondents such as

---

[6]     To be sure, it is apparent that the Government seeks to administer Vineland-3 to Roland from its February 1, 2017 notice.

parents, caregivers and teachers, coupled with the lack of any norms for self-reporting, . . . it is clinically inappropriate to administer the Vineland-3 to Mr. Roland." (Def. Sec. Obj. at 4-5 (citation omitted)). Moreover, Roland's experts have set forth why a third-party such as a parent or teacher—not Roland himself—should be subjected to this test. (*See* Greenspan Decl. at 5-6; Hunter Decl. ¶¶ 15-18). Nothing from the Government counters Roland's experts' declarations to this effect.

Accordingly, Roland himself shall *not* be subjected to Vineland-3. To the extent Roland has further objections as to what third parties may or may not be subjected to Vineland-3, he may raise such objections at a later time depending on how the Government elects to proceed.

### G. Clinical Interview and Questions about Past Criminal Conduct

Finally, Roland notes that the Government has not provided notice of conducting a clinical interview with questions beyond the requested testing and he objects to any such interview for lack of notice. (Def. Sec. Obj. at 10). Roland asserts that, if the Court allows "Government experts to conduct a clinical interview, counsel demands that the Government provide notice of areas of questioning so that she may raise any objections to the clinical interview." (*Id.* at 10-11). In particular, Roland contends that his "alleged role in the charged crimes or in past crimes has little to no relevance to the question of intellectual disability." (*Id.* at 11-12). The Government provides no response Roland's objection or concerns.

Given the Government's silence, there appears to be no dispute for the Court to resolve. Roland may re-raise his arguments should a dispute materialize.

**IV.     Conclusion**

For the reasons set forth above, the Court overrules-in-part and sustains-in-part Roland's objections to the Government's proposed testing.   An appropriate Order accompanies this Memorandum Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**